GREGORY ALAN COLLIER, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 17376

December 22, 1987                    747 P.2d 225

*Morgan D. Harris,* Public Defender, *Terrence M. Jackson,* Deputy Public Defender, and *Susan Deems Roske,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, *Mel Harmon,* Deputy District Attorney, and *Carolyn Ellsworth,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

Earl C. Harris, an employee of the Stop 'N Go market in Las Vegas, Nevada, was found dead in the market's cooler on June 4, 1981, his hands tied behind his back and two gunshot wounds to the head. The fatal shot—passing through the brain—was probably fired from a distance of eighteen to twenty-four inches from his head. Missing from the store and allegedly taken by Collier were $300, ten cartons of cigarettes, and a calculator.

Gregory Alan Collier was convicted of first degree murder with use of a deadly weapon and robbery with use of a deadly weapon on April 11, 1983. At his first penalty hearing, the jury returned a verdict of death. Because of prosecutorial misconduct and unreasonable time limitations on closing arguments, we set aside his death sentence and remanded the case for a new sentencing hearing. Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985).

Collier now argues that the double jeopardy clause bars the State from seeking the death sentence at the second penalty hearing, and that the district court's denial of his motion to preclude the seeking of the death sentence was error. Collier was sentenced to death, again, at this second penalty hearing. Collier also contends that there was repeated prosecutorial misconduct and that the sentence was disproportionate.

## DOUBLE JEOPARDY

Based upon the Fifth Amendment of the United States Constitution, Collier argues that the district court erred by denying Collier's motion to preclude the State from seeking the death penalty at the new penalty hearing. The double jeopardy clause was applied to sentencing hearings in Bullington v. Missouri, 451 U.S. 430 (1981). The Court held the State was barred from seeking the death sentence at the second penalty hearing which was granted by the trial court. The Court stated that the statutory

sentencing procedure resembled a trial on the issue of guilt or innocence.[1] At the first trial, the jury sentenced the defendant to life in prison, effectively acquitting the defendant of whatever was necessary to impose the death sentence. A defendant cannot be retried on an issue after a verdict of acquittal. United States v. DiFrancesco, 449 U.S. 117, 129-130 (1980).

Collier was not acquitted at his first penalty hearing as the jury sentenced him to death. Therefore, *Bullington* is not factually analogous, and the district court was not required to limit the jury's choice of sentence at the second penalty hearing.

We set aside the first penalty hearing and remanded for a second. It has long been held that the double jeopardy clause does not bar retrial when a conviction is reversed on appeal. United States v. Ball, 163 U.S. 662 (1896); United States v. Tateo, 377 U.S. 463 (1964). There is an exception to this rule: when the defendant is granted a mistrial because of prosecutorial or judicial overreaching *and* "where the governmental conduct in question" was "intended to 'goad' the defendant into moving for a mistrial," reprosecution will be barred. United States v. Dinitz, 424 U.S. 600 (1976); Oregon v. Kennedy, 456 U.S. 667 (1982). This exception has also been extended to cases in which the motion for mistrial was denied and the judgment was subsequently reversed because of the prosecutorial misconduct which precipitated the motion for mistrial. United States v. Rios, 637 F.2d 728 (10th Cir. 1980) (2-1 decision); Petrucelli v. Smith, 544 F.Supp. 627 (1982). Thus, Collier argues that the prosecution was both overreaching and intending to goad him into moving for a mistrial.[2]

In Melchor-Gloria v. State we stated:

> The dispositive question is thus whether the prosecutor's conduct under the circumstances of the instant case constitutes "overreaching" or "harassment" intended to goad appellant into moving for a mistrial. In addressing this issue, we note the trial court came to the conclusion that there was no prosecutorial overreaching. The court made an express finding there was no intentional conduct on the part of the prosecutor which could be classified as bad faith. The trial court also found that the prosecutor was not guilty of gross

---

[1]NRS 175.552 and NRS 175.554 are substantially similar to the then corresponding Missouri statutes (Mo.Rev.Stat. §§ 565.006, 565.012(2), (3) and (4)) which were the basis for the Court's statement that the sentencing procedure resembled a trial on the issue of guilt or innocence.

[2]The specific instances of misconduct are delineated in Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985).

negligence. These appear to represent findings of fact which must be sustained on appeal unless clearly erroneous. *See* United States v. Green, 636 F.2d 925, 928 (4th Cir. 1980); United States v. Calderon, 618 F.2d 88, 90 (9th Cir. 1980).

99 Nev. 174 at 178, 660 P.2d 109 at 112 (appeal following declaration of mistrial without prejudice).

In the case at hand, the trial court made findings of fact in denying Collier's motion. The court stated: "But I find at this time that there is no evidence that such actions were done in bad faith or to harass and prejudice the Defendant and the misconduct was not over reaching. . . ."

Although the prosecutor's remarks at the first penalty hearing were "egregious," we did not state in our prior opinion that there was an intention to goad the defense into moving for a mistrial. The facts do not suggest that the prosecution was disposed to seek a mistrial for its advantage, and the finding of the trial court cannot be said to be clearly erroneous. We therefore affirm the district court's ruling upon Collier's motion to preclude the State from seeking the death penalty.

## PROSECUTORIAL MISCONDUCT

Collier has, once again, directed this court to alleged prosecutorial misconduct. We note two statements made by the prosecutor during closing argument which merit our attention.

In justifying a sentence of death, the prosecutor stated of Gregory Collier:

> He is a killer. Society has the right to protect itself from its enemies and Greg Collier is certainly an enemy. We have the right to kill our enemies as we have the right to kill mad dogs or to kill disease or plague or pestilence.

Although we do not consider this statement to have been prejudicial under the facts of this case, we disapprove of the manner in which the prosecution equated Gregory Collier with mad dogs, disease, plague or pestilence in its recommendation that the death penalty be imposed. Pacheco v. State, 82 Nev. 172, 179, 414 P.2d 100, 103-104 (1966).

Additionally, the prosecutor retorted during rebuttal:

> Mr. Jackson tells you, quote, I'm biased. And ladies and gentlemen, I'm going to tell you the same thing. The essayist and philosopher Goeth [sic] said many years ago, "I can promise you to be sincere but not impartial." And I tell you I am sincere, but I'm not impartial. I don't like murder.

While we understand that this comment may have been intended simply as an oratorical device, we direct all counsel to be mindful that they are officers of the court "whom juries have a right to regard as unprejudiced, impartial, and nonpartisan, and bent only on seeing justice done and the law vindicated in accordance with the rules of law. . . ." State v. Rodriguez, 31 Nev. 342, 346, 102 P. 863, 864 (1909).

Lastly, Collier contends that the death sentence is disproportionate to the penalty imposed in similar cases. We have reviewed Collier's sentence in accordance with NRS 177.055(2), and we conclude that it is not disproportionate. This execution style murder was violent and unprovoked. The fact that the jury also found several mitigating circumstances does not support a conclusion that the aggravating circumstances were actually outweighed by the mitigating circumstances or that the sentence was disproportionate.

We have examined the remaining assignments of error and conclude they are without merit. Accordingly, we affirm the sentence of death.