10 P.3d 1177

STATE of Arizona, Petitioner,

v.

The Honorable Cindy Kelly JORGENSON, Judge of the Superior Court in and for the County of Pima, State of Arizona, Respondent,

Alex Hughes, Real Party in Interest.

No. CV–00–0064–SA.

Supreme Court of Arizona, En Banc.

Sept. 29, 2000.

Barbara LaWall, Pima County Attorney By: Elizabeth S.L. Tyszko, Tucson, Attorneys for State of Arizona.

Susan A. Kettlewell, Pima County Public Defender By: John Seamon, Tucson, Attorneys for Alex Hughes.

## OPINION

FELDMAN, Justice.

¶ 1 Alex Hughes (Defendant) was charged with first-degree murder. His insanity defense was supported by a great deal of evidence, including the opinions of all six experts who examined him. Evidently, the state's experts agreed, as the state presented no expert to contest Defendant's insanity defense. Notwithstanding this, the jury rejected the defense and convicted Defendant of first-degree murder. Defendant appealed.

¶ 2 In that appeal we determined that despite the state's weak case on the question of insanity, Defendant was convicted because the prosecutor at trial engaged in knowing and intentional misconduct. *See State v. Hughes,* 193 Ariz. 72, 969 P.2d 1184 (1998). The misconduct included "ignoring the facts ..., [and] relying on prejudice...." *Id.* at 86 ¶ 61, 969 P.2d at 1198 ¶ 61. It was "a dishonest way to represent the State ..., and it was especially dishonest ... where the evidence of insanity was substantial, and where the State had no evidence that [Defendant] had fabricated an insanity defense." *Id.* We unanimously concluded that the "evi-

dence of mental illness was overwhelming" and Defendant's case for acquittal on grounds of insanity was "substantial." *Id.* at 88 ¶ 73, 969 P.2d at 1200 ¶ 73. The state overwhelmed Defendant's insanity defense, "but it did not do so with evidence; it did so with prosecutorial misconduct." *Id.* at 87 ¶ 66, 969 P.2d at 1199 ¶ 66. We condemned this win-by-any-means strategy, agreeing with Defendant's argument that it "was a direct attempt to ... prejudice the jury" and to put the fear of acquittal in the jurors' minds. *Id.* at 87 ¶ 67, 969 P.2d at 1199 ¶ 67.[1]

¶ 3 Thus, the prosecutor deliberately risked a mistrial or reversal to win the case and prevent an acquittal. Defendant, in fact, moved for a mistrial, and the original trial judge erred in denying that motion, compelling us to reverse because the prosecutor's multiple acts of misconduct deprived Defendant of a fair trial. *See id.* at 88 ¶ 74, 969 P.2d at 1200 ¶ 74. If the trial judge had granted the motion, as he should have, he would eventually have had to decide whether Arizona's double jeopardy clause prevented retrial. *See Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261 (1984). But the judge denied the motion; and after we reversed and remanded, Defendant moved to dismiss the charges, raising double jeopardy as a bar to retrial. The new trial judge agreed and granted the motion, holding that article II, section 10 of the Arizona Constitution forbids retrial. The state now seeks special action relief, claiming Defendant is entitled only to a new trial, not dismissal.

■■■ ¶ 4 The answer to this issue, as a matter of state law, is found in *Pool.* As the trial judge in the present proceeding correctly concluded, the prosecutor's deliberate conduct, which should have triggered a mistrial yet eventually resulted in reversal, deprived Defendant of his right to have the case fairly tried to a conclusion with the jury selected. *See id.* at 109, 677 P.2d at 272. Jeopardy attached on selection of the jury. *See McLaughlin v. Fahringer,* 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986). The grant of a

mistrial does not bar retrial except when the mistrial is granted because of intentional prosecutorial misconduct aimed at preventing an acquittal. *See Pool,* 139 Ariz. at 109, 677 P.2d at 272. In that situation, the double jeopardy clause bars retrial. *See id.*

¶ 5 *Pool* rejects the rule adopted by the plurality opinion in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). *See id.* at 108, 677 P.2d at 271. Instead, it follows the holding of the Oregon Supreme Court in *State v. Kennedy,* 295 Or. 260, 666 P.2d 1316 (1983), after remand from the United States Supreme Court. *See id.* at 109, 677 P.2d at 273. Double jeopardy prevents retrial when the prosecutor's deliberate, intentional, and knowing conduct

> is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is *indifferent to the [danger of] resulting mistrial or reversal.* When this occurs, it is clear that the burden of a second trial is not attributable to the defendant's preference for a new trial over completing the trial infected by error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force the defendant to such a choice.

*Pool,* 139 Ariz. at 107, 677 P.2d at 270 (quoting *State v. Kennedy,* 666 P.2d at 1326 (emphasis added)).

■■ ¶ 6 We have previously held that our state's double jeopardy clause includes the right to be free from multiple trials. *See Pool,* 139 Ariz. at 109, 677 P.2d at 272. To put it another way: the right to a fair trial to a conclusion before the impaneled jury. *See id.* While the defendant ordinarily waives that right when he seeks a new trial because of error in the original trial, the clause applies when the need for a second trial is brought about by the state's egregiously intentional, improper conduct. In *Pool,* we put it succinctly:

> We agree with the Oregon Supreme Court that when [the state's knowing and inten-

1. We have not described all of the acts that led to these conclusions. The interested reader will find more detail in this court's opinion, *id.* at 81, ¶¶ 34–35, 85 ¶ 58, and 87 ¶¶ 67–68, 969 P.2d at 1193 ¶¶ 34–35, 1197 ¶ 58, and 1199 ¶¶ 67–68. Suffice it to say the misconduct permeated the entire trial.

tional misconduct is the reason for the impanelment of a new jury and the start of a new trial] the burden of another trial cannot be attributed to defendant's preference to start anew rather than "completing the trial infected by error" and is, rather, attributable to the "state's readiness, though perhaps not calculated intent, to force the defendant to such a choice." In such a situation, the State has intentionally exposed the defendant to multiple trials for the same crime and has destroyed his expectation of completing the proceeding before the original tribunal. This is exactly what the double jeopardy provision was intended to prevent.

*Id.* (quoting *State v. Kennedy*, 666 P.2d at 1326).

■ ¶ 7 Of course, the fact that the original trial judge erroneously denied a mistrial, thus requiring reversal on appeal, cannot put a defendant in a worse position than if the judge had correctly granted the mistrial motion. Surely a defendant whose mistrial motion was erroneously denied, as in the present case, should have the same constitutional protection as one whose motion was correctly granted, as in *Pool. See State v. Breit*, 122 N.M. 655, 930 P.2d 792, 797 (1996).

¶ 8 The dissent, however, argues that double jeopardy cannot apply where "no mistrial has been declared" and a verdict was reached, even though the trial was unfair and the conviction obtained by the state's egregious and intentional misconduct had to be reversed on appeal. *See* dissent at ¶ 17. For the reasons stated previously, we disagree.

¶ 9 Significant authority contrary to the dissent's view exists in states, like Arizona, that do not follow the plurality rule of *Oregon v. Kennedy.* In *Breit*, for instance, the defendant was convicted of first-degree murder and was granted a new trial on grounds of extreme prosecutorial misconduct. 930 P.2d at 795. He then moved to dismiss on

grounds of double jeopardy. *See id.* The trial court granted that motion, but the New Mexico Court of Appeals reversed. *See id.* Defendant was retried and again convicted. *See id.* The New Mexico Supreme Court eventually held that the double jeopardy issue had not been waived and that the state constitution's double jeopardy clause barred retrial because in the first trial the prosecutor either intended to provoke a mistrial or acted in willful disregard of possible mistrial, retrial, or reversal and thus denied the defendant a fair trial. *See id.* at 797, 804, 806–07.

¶ 10 The Hawai'i Supreme Court reached a similar conclusion, holding that application of double jeopardy was required after reversal because egregious prosecutorial misconduct[2] denied the defendant a fair trial. *See State v. Rogan*, 91 Hawai'i 405, 984 P.2d 1231, 1250 (1999). The court said:

> Finally, we are mindful of the fact that when egregious prosecutorial misconduct results in a reprosecution either by mistrial *or a reversal on appeal*, the burden of another trial cannot be attributed to defendant's preference to start anew rather than to complete the trial before the original tribunal. On the contrary, the burden of retrial in such a case is attributable to the prosecution's misconduct or overreaching, though perhaps not specific intent, designed to force the defendant to such a choice.

*Id.* at 1249 (emphasis added).

¶ 11 Other states take the same view. *See, e.g., Commonwealth v. Murchison*, 392 Mass. 273, 465 N.E.2d 256, 258 (1984) (if prosecutor's conduct was intended to provoke mistrial and resulted in denial of fair trial, double jeopardy clause applies and requires dismissal even though trial was completed to jury verdict and then judge granted mistrial motion and ordered new trial); *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321, 322–23 (1992) (prosecutor's *Brady* violations in withholding exculpatory evidence prevented fair

---

2. During rebuttal final argument, the prosecutor appealed to the jury to convict the defendant because the victim's mother wanted such a conviction and defendant's actions were "every mother's nightmare"—to "[l]eave your daughter for an hour and a half, and you walk back in,

and here's some black, military guy on top of your daughter." *Id.* at 1238, 969 P.2d 1184. Defendant's motion for mistrial was denied by the trial judge, defendant was convicted, and the case was reversed on appeal.

trial; conviction reversed for prosecutor's misconduct; double jeopardy applied as result of reversal, no mistrial motion having been made); *see also State v. Colton,* 234 Conn. 683, 663 A.2d 339, 347 (1995) (clandestine misconduct causing ultimate reversal on appeal invokes double jeopardy); *Collier v. State,* 103 Nev. 563, 747 P.2d 225 (1987); *State v. Cochran,* 51 Wash.App. 116, 751 P.2d 1194 (1988).

¶ 12 There are, of course, cases to the contrary. *See, e.g., Ex parte Davis,* 957 S.W.2d 9 (Tex.Crim.App.1997). Their rationale is, we believe, answered as follows by the dissent in *Davis:*

> However, the majority holds there is no double jeopardy violation because there was not a mistrial, only a reversal. But there is no rationale for this type of distinction. If the requested mistrial was erroneously denied and that error is found on appeal, why should the defendant be subjected to retrial? Why should a defendant, due to an *incorrect* ruling by the trial judge, lose this constitutional protection? It is simply inconceivable that the valuable double jeopardy protections suddenly vanish when the case enters the appellate process. The right of a defendant to be free from double jeopardy should not be determined by which court *correctly* determines that misconduct infected the trial. A constitutional *guarantee* should not morph into a "non-right" depending upon the point in the judicial process an individual finds himself. The trial judge, through an erroneous ruling, should not be allowed to forfeit an individual's valuable constitutional right.

*Id.* at 29 (Baird, J., dissenting) (citations omitted) (emphasis in original).

¶ 13 Application of double jeopardy is not only doctrinally correct when egregious and intentional prosecutorial misconduct has prevented acquittal, it is also required as a matter of pragmatic necessity. Any other result would be an invitation to the occasional unscrupulous or overzealous prosecutor to try any tactic, no matter how improper, knowing that there is little to lose if he or she can talk an indulgent trial judge out of a mistrial. The worst that could then happen

is reversal for a new trial and another shot at a conviction. This, of course, is exactly the type of governmental abuse at which the double jeopardy clause was aimed.

■ ¶ 14 Applying the *Pool* principle to the situation found in the original appeal in this case, we have no choice but to take the unfortunate step of approving the trial judge's order of dismissal on double jeopardy grounds. We do not take this action to sanction the prosecutor for misconduct but because our constitution's double jeopardy clause requires it. We are quite sure the present trial judge took no more pleasure than we do in dismissing the case with prejudice, but the blame must be found elsewhere. This is perhaps the third or fourth time that the conduct of this same prosecutor has raised the same type of problem. It is unfortunate that he was permitted to try so serious a case and, without proper supervision, permitted to try it in such an improper manner.

¶ 15 For the reasons described above, jurisdiction is accepted but relief is denied. The trial judge's February 4, 2000 order is approved. The trial court may proceed in a manner consistent with this opinion, including entry of an order of dismissal with prejudice, with an appropriate stay to allow the state to make such filings as it may deem appropriate to initiate Title 36 proceedings leading to Defendant's commitment in the Arizona State Hospital.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, and CHARLES E. JONES, Vice Chief Justice.

MARTONE, Justice, dissenting.

¶ 16 I would grant relief. In *State v. Hughes,* 193 Ariz. 72, 969 P.2d 1184 (1998), Hughes sought a new trial based upon prosecutorial misconduct. He did not raise double jeopardy nor did he seek an order of dismissal based upon double jeopardy. We remanded for new trial. He has thus waived the issue. We specifically said, "[b]ecause defendant was convicted and is seeking a new trial, the double jeopardy clause is not an issue in this case." 193 Ariz. at 80, 969 P.2d at 1192. A party cannot raise a new issue after remand. Nor do I believe the trial judge could

**394**

do anything other than comply with the mandate of this court to give the defendant a new trial.

¶ 17 Even if Hughes were not foreclosed from raising the double jeopardy issue, I believe double jeopardy does not arise under both the federal and state constitutions. Under *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982) and *Pool v. Superior Court,* 139 Ariz. 98, 677 P.2d 261 (1984), double jeopardy does not apply where no mistrial has been declared. Hughes was not deprived of a verdict from the jury impaneled to hear his case. This case went to verdict. In *Pool,* we held "that jeopardy attaches under art. 2, § 10 of the Arizona Constitution when a mistrial is granted." 139 Ariz. at 108, 677 P.2d at 271. *Oregon v. Kennedy* is to the same effect. *See United States v. McAleer,* 138 F.3d 852, 855–56 (10th Cir.1998). ("Defendants' reliance on *Kennedy* is misplaced, however, because no mistrial was declared in this case.") In addition, in *Pool,* we found that "this prosecutor intentionally engaged in improper conduct for the purpose of forcing defendant to seek a mistrial so that the prosecution could procure a new indictment with correct charges." 139 Ariz. at 107, 677 P.2d at 270. We made no such finding in this case. There was no evidence in this case that this prosecutor engaged in misconduct in order to provoke defendant to move for a mistrial to avoid a fear of acquittal.

¶ 18 By applying double jeopardy here, the line between prosecutorial misconduct which results in a new trial, on the one hand, and prosecutorial misconduct which results in double jeopardy, on the other, is blurred.

¶ 19 Hughes sought and obtained an order granting a new trial. He was not entitled to dismissal. I therefore respectfully dissent.

NOYES, Judge, Dissenting.*

¶ 20· I join Justice Martone's dissent, except I find no waiver.

---

* Justice Ruth V. McGregor did not participate in the determination of this matter; pursuant to Ariz. Const. art. VI, § 3, the Honorable E.G. Noyes, Jr., Chief Judge of the Arizona Court of Appeals, Division One, was designated to sit in her stead.