NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MICHAEL MUTUBERRIA, *Appellant*.

No. 1 CA-CR 15-0017
FILED 2-23-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-435145-001
The Honorable Jerry Bernstein, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

**J O N E S**, Judge:

**¶1**      Michael Mutuberria appeals his conviction and sentence for one count of misconduct involving weapons. After searching the entire record, Mutuberria's defense counsel has identified no arguable non-frivolous questions of law. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error. Mutuberria also filed his own supplemental brief *in propria persona*. After reviewing the record, we find no error. Accordingly, Mutuberria's conviction and sentence are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**      In August 2013, Mutuberria was indicted for misconduct involving weapons, a class four felony, in violation of Arizona Revised Statutes (A.R.S.) section 13-3102(A)(4),[2] which prohibits knowing "[p]ossessi[on of] a deadly weapon or prohibited weapon if such person is a prohibited possessor." A trial was held in September 2014, during which the trial court declared a mistrial when the jury was unable to reach a unanimous decision. Mutuberria was then retried before a new jury on the same charge in October 2014.

**¶3**      At the second trial, two Phoenix Police Department detectives testified that, in July 2013, they were in an unmarked police vehicle sitting at a stop light when a BMW stopped in the lane alongside them. When the driver, later identified as Mutuberria, looked over at the uniformed officers, he started "acting very nervous." When the light turned green, the detectives allowed Mutuberria to pass them, obtained the BMW's license plate number, and determined the vehicle was registered to Mutuberria.

**¶4**      The detectives then observed the BMW drift into the adjacent lane three times and, intending to initiate a traffic stop, activated the lights and siren on their vehicle. Mutuberria did not immediately pull over. He eventually slowed down and turned into a CVS Pharmacy parking lot, but

---

[1]      We view the facts in the light most favorable to sustaining the jury's verdict, with all reasonable inferences resolved against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

[2]      Absent material changes from the relevant date, we cite a statute's current version.

then exited the parking lot and rapidly accelerated. The detectives continued following Mutuberria, who was driving at "a very high rate of speed" of "80 plus miles an hour," at a distance but deactivated the lights and siren and called for backup.

¶5        Mutuberria eventually turned into a residential neighborhood. The detectives lost sight of the BMW for several seconds but when they turned into the neighborhood, they observed the BMW "rolling slowly with the driver's side door open and no one inside the vehicle." The BMW struck a sign and came to a stop. The detectives exited their vehicle and began searching for Mutuberria while a third detective who had responded to the call for backup stayed with the BMW.

¶6        The detectives located a man on the front driveway of a house just north of where the BMW had stopped. When they asked him for his name, the man responded, "Jose." Although he was no longer wearing a blue shirt, the detectives recognized the man as the driver of the BMW and arrested him. As they escorted Mutuberria back toward the police vehicle and BMW, he stated without prompting, "I must have blacked out," and, "I know that's my car, but I don't know what's going on." One of the detectives told Mutuberria it was a shame that he had to wreck his car, and Mutuberria responded, "I just got spooked."

¶7        Meanwhile, the third detective saw a gun in the open driver's side door of the BMW. Nearby, the detectives found the blue shirt Mutuberria was wearing earlier on the ground and a wallet containing credit cards and identification containing Mutuberria's name. Once inside the police vehicle, Mutuberria told the detectives his real name and date of birth.

¶8        In the course of an inventory search of the BMW, the third detective attempted to unload the gun before impounding it but was unable to do so. At trial, however, a forensic scientist for the Phoenix Police Department Crime Laboratory testified he was able to fire the gun and found it to be fully operational despite some missing parts that made it difficult to unload. At the close of State's evidence, Mutuberria's counsel made a motion for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, which was denied. Mutuberria admitted he was a prohibited possessor on the date of the alleged offense but did not otherwise testify in his own defense.

¶9        The jury found Mutuberria guilty of misconduct involving weapons and also found, as an aggravating factor, that Mutuberria had a

prior felony conviction within the past ten years. The trial court found Mutuberria had two historical prior felonies and sentenced him as a non-dangerous repetitive offender to a slightly aggravated term of eleven years' imprisonment. The court also credited Mutuberria with fifty-seven days of presentence incarceration. Mutuberria timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.  Mutuberria's Choice Not to Testify

¶10        Within his supplemental brief, Mutuberria argues his testimony in the first trial was unconstitutionally conditioned upon a waiver of the attorney-client privilege and that this condition improperly interfered with his ability to testify in both trials. We need not address the constitutionality of defense counsel's request that Mutuberria waive the attorney-client privilege while testifying during the first trial because a mistrial was granted. Any prejudice Mutuberria claims he may have suffered in the course of the first trial was remedied by the trial court having declared a mistrial. *See King v. Superior Court*, 108 Ariz. 492, 493 (1972) (agreeing "a mistrial places the parties in the same position as if the case had never been tried"). And, any arguable basis for appeal from the first trial that was not repeated during the second is moot because the jury from the first trial did not convict him. *See State v. Frederick*, 129 Ariz. 269, 271 (App. 1981) (finding the appellant's alleged errors moot where the jury did not convict the appellant) (citing *Pool v. Superior Court*, 139 Ariz. 98, 109 (1984)). In the second trial, Mutuberria was not asked to waive the attorney-client privilege as a condition of testifying in his own defense.

¶11        Our review of the record likewise reveals no evidence Mutuberria was intimidated, manipulated, or otherwise barred from testifying at either trial. *Cf. State v. Bush*, 148 Ariz. 325, 330 (1986) (noting the constitutional right to a fair trial includes a "disciplined courtroom where the search for truth and justice is unhampered by any feelings of fear, intimidation or revenge") (citing *State v. Stewart*, 278 S.E.2d 627, 631 (S.C. 1982)). The record does not suggest Mutuberria felt forced to remain silent, and it is not within the purview of the trial court to question a defendant's decision not to testify. *See State v. Gulbrandson*, 184 Ariz. 46, 65 (1995) (noting the trial court is not required to have a defendant "make an on-the-record waiver of the right to testify").

¶12        Insofar as Mutuberria claims his counsel erroneously advised he could not testify without waiving the attorney-client privilege and this

circumstance resulted in a wrongful conviction, his claim is one of ineffective assistance of counsel, which may only be brought through a petition for post-conviction relief. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) ("[I]neffective assistance of counsel claims are to be brought in Rule 32 proceedings . . . [and] will not be addressed by appellate courts regardless of merit."). We therefore express no opinion as to this contention.

## II. Double Jeopardy

¶13 Mutuberria also argues the second trial subjected him to double jeopardy because the State could not prove that, had he chosen to testify in the first trial, the jury "would not have found [Mutuberria] . . . [n]ot [g]uilty." But, Mutuberria misconstrues the application of the double jeopardy doctrine. This doctrine, as found in both the U.S. and Arizona Constitutions, *see* U.S. Const. amend. V; Ariz. Const. art. 2, § 10, affords protections "'only if there has been some event, such as an acquittal, which terminates the original jeopardy,'" *Lemke v. Rayes*, 213 Ariz. 232, 239, ¶ 19 (App. 2006) (quoting *Richardson v. United States*, 468 U.S. 317, 325 (1984), and citing *Brown v. Ohio*, 432 U.S. 161, 167-69 (1977)). A mistrial declared because of the jury's failure to reach a unanimous decision is not considered a termination of the original jeopardy. *Id.* ("[N]either the failure of a jury to reach a verdict nor a trial court's declaration of a mistrial following a hung jury is an 'event' that terminates the original jeopardy.") (citing *Richardson*, 468 U.S. at 325-26, and *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

¶14 Indeed, our supreme court has held that retrial following a mistrial is barred only where it is based on "intentional prosecutorial misconduct aimed at preventing an acquittal." *State v. Jorgenson*, 198 Ariz. 390, 391, ¶ 4 (2000) (citing *Pool*, 139 Ariz. at 109). Mutuberria does not allege any prosecutorial misconduct, and we find none. Thus, Mutuberria was not exposed to double jeopardy upon retrial of the case against him.

## III. Fundamental Error Review

¶15 As relevant here, a person commits misconduct involving weapons by "knowingly . . . [p]ossessing a deadly weapon or prohibited weapon if such person is a prohibited possessor." A.R.S. § 13-3102(A)(4). Mutuberria admitted he was a prohibited possessor at the time he fled from police, and sufficient evidence was presented for the jury to conclude beyond a reasonable doubt that he knowingly possessed a deadly weapon, the gun that was found in the BMW. *See* A.R.S. § 13-3101(A)(1) (defining

deadly weapon to include "anything that is designed for lethal use . . . includ[ing] a firearm").

¶16  Having reviewed the entire record for reversible error, we find none. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). All proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Mutuberria was represented by counsel at all stages of the proceedings and was present at all critical stages. The jury was properly comprised of eight jurors, and the record shows no evidence of jury misconduct. *See* A.R.S. § 21-102(B); Ariz. R. Crim. P. 18.1(a). At sentencing, Mutuberria was given an opportunity to speak, and the trial court stated on the record the evidence and materials it considered and the factors it found in imposing sentence. Additionally, the sentence imposed was within the statutory limits. *See* A.R.S. § 13-703(C), (J).

## CONCLUSION

¶17  Mutuberria's conviction and sentence are affirmed. Defense counsel's obligations pertaining to Mutuberria's representation in this appeal are at an end. Defense counsel need do no more than inform Mutuberria of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to our supreme court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

¶18  Mutuberria has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a). Upon the Court's own motion, we also grant Mutuberria thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama