NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CAMERON LEEZELL TAYLOR, *Appellant*.

No. 1 CA-CR 16-0600
FILED 8-29-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-000910-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Michael J. Brown and Judge Randall M. Howe joined.

---

**M c M U R D I E**, Judge:

¶1        Cameron Leezell Taylor appeals his convictions and sentences for drive-by shooting, aggravated assault, assisting a criminal street gang, second-degree murder, and endangerment.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        Shortly before noon on March 23, 2009, J.M., Antwone C., Arkeem C., and Taylor were driving through a south Phoenix neighborhood in J.M.'s Honda Accord. At some point, the men, all documented gang members, began following a Chevrolet Caprice occupied by two rival gang members, T.C. and E.M., and two women, S.M. and A.B. As J.M. drove, Taylor, the front-seat passenger, withdrew a handgun from his waistband. When the Accord pulled within two or three car lengths behind the Caprice, Taylor extended his arm outside the front-passenger window and began shooting. At the same time, backseat passenger Arkeem C. stood upright through the Honda's sunroof and began firing a rifle at the Caprice. Initially, the handgun bullets ricocheted off the road, but Taylor quickly adjusted his aim upward and he and Arkeem C. shot at their rivals' vehicle for approximately twenty seconds before the Caprice's driver, A.B., maneuvered through traffic and sped away.

¶3        Notwithstanding A.B.'s evasive actions, a bullet hit E.M. in the back. Another bullet pierced the rear window of an unrelated vehicle, striking and killing G.L. A third bullet hit the tire of another unrelated vehicle, but that driver, N.M., was not injured.

¶4        Following these events, Taylor was the target of an extensive, multi-agency law enforcement investigation, but he eluded capture until November 21, 2013. Once he was apprehended, the State charged Taylor

---

[1]        We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

with one count of drive-by shooting (Count 1), four counts of aggravated assault (Count 2 – victim E.M.; Count 3 – victim T.C.; Count 4 – victim S.M.; and Count 5 – victim A.B); one count of assisting a criminal street gang (Count 6); one count of first-degree, premeditated murder (Count 7 – victim G.L.); and one count of endangerment (Count 8 – victim N.M.). The State also alleged numerous aggravating factors.

¶5        Eight days into the first trial, the court granted Taylor's motion for a mistrial. After the State's presentation of evidence at the second trial, Taylor moved for a judgment of acquittal on Counts 3 and 4, which the trial court granted. The jury then found Taylor not guilty of first-degree murder, guilty of the lesser-included offense of second-degree murder, and guilty of the remaining charges. The jury also found multiple aggravating factors for each count. The superior court sentenced Taylor to an aggravated term of 12 years' imprisonment on Count 1, a concurrent, aggravated term of 3.5 years' imprisonment on Count 6, a concurrent, aggravated term of 22 years' imprisonment on Count 7, a consecutive (as to Counts 1, 6, and 7), aggravated term of 12 years' imprisonment on Count 2, a consecutive (as to Count 2), aggravated term of 12 years' imprisonment on Count 5, and a consecutive (as to Count 5), aggravated term of 3 years' imprisonment on Count 8. Taylor timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[2]

## DISCUSSION

### A.        Alleged Double Jeopardy Bar to Second Trial.

¶6        Taylor argues the trial court should have barred retrial pursuant to the Double Jeopardy Clauses of the United States and Arizona Constitutions. *See* U.S. Const. amend. V; Ariz. Const. art. 2, § 10.

¶7        Before his first trial, Taylor moved *in limine* to preclude any evidence that he fled or concealed his whereabouts after the shooting. The State opposed the motion, explaining the search for Taylor "became local and national news" and included multiple profiles on the television program *America's Most Wanted*. At a hearing on the motion, defense counsel argued any evidence regarding the manhunt to find Taylor was inadmissible hearsay. In response, the prosecutor acknowledged the U.S. Marshal who led the manhunt was not available to testify, but argued a

---

[2]        Absent material revision after the date of an alleged offense, we cite to the current version of applicable statutes and rules.

local detective who assisted the U.S. Marshal should be permitted to testify regarding events he witnessed firsthand. After hearing from the parties, the trial court precluded as unfairly prejudicial any evidence regarding Taylor's profiles on *America's Most Wanted*. The court further held, however, other non-hearsay evidence regarding Taylor's capture was admissible.

¶8            Notwithstanding the evidentiary ruling, during the first trial, the prosecutor asked a local police detective whether he "personally contact[ed] *America's Most Wanted* regarding [Taylor]." The detective responded in the affirmative, and defense counsel objected and asked to approach the bench. During the ensuing bench conference, defense counsel argued the prosecutor violated the court's pretrial order. The prosecutor denied violating the order, maintaining the court's evidentiary ruling precluded only evidence regarding the U.S. Marshal who led the manhunt. At that point, defense counsel moved for a mistrial. To allow the court reporter time to prepare a transcript of the motion *in limine* hearing, the trial court delayed ruling on the motion for mistrial.

¶9            The following morning, after reviewing the transcripts of both the motion *in limine* hearing and the relevant testimony from the previous day, the trial court asked the prosecutor to explain why he asked "that question" in contravention of the court's order. The prosecutor stated he erroneously believed the trial court's evidentiary ruling excluded only hearsay evidence. Having just reviewed the motion *in limine* transcript, the prosecutor avowed he "never would have asked the question" had he realized the trial court's ruling, with respect to *America's Most Wanted* evidence, was predicated on unfair prejudice rather than hearsay. After the prosecutor acknowledged that nothing could ameliorate the resulting prejudice, the court declared a mistrial. In doing so, the court found the prosecutor's violation was negligent, not intentional. The matter then proceeded to a second trial.

¶10           Taylor argues the trial court's remedy of mistrial was insufficient. Indeed, asserting the prosecutor intentionally "crafted" questions "to elicit the exact information" precluded by court order, Taylor contends the court should have "barred a retrial."

¶11           "Whether double jeopardy bars retrial is a question of law, which we review *de novo*." *State v. Moody*, 208 Ariz. 424, 437, ¶ 18 (2004). Although a defendant "ordinarily waives" his "right to be free from multiple trials" when he "seeks a new trial because of error in the original trial," there is no such waiver "when the need for a second trial is brought

about by the state's egregiously intentional, improper conduct." *State v. Jorgenson*, 198 Ariz. 390, 391, ¶ 6 (2000). Stated differently, when the prosecutor's intentional misconduct is the reason the defendant seeks a new trial, "the State has intentionally exposed the defendant to multiple trials for the same crime," the precise harm the Double Jeopardy Clauses were "intended to prevent." *Id.* at 392, ¶ 6. Accordingly, jeopardy attaches when a mistrial is granted on a defendant's motion if: (1) the motion is predicated on the prosecutor's improper conduct; (2) "such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial"; and (3) the conduct causes prejudice that cannot be cured by means short of a mistrial. *Pool v. Superior Court (State)*, 139 Ariz. 98, 108–09 (1984).

¶12 In this case, the prosecutor admitted he violated the trial court's evidentiary ruling and acknowledged it was impossible to "unring [the] bell." Therefore, the only question remaining is whether the prosecutor's conduct was intentional. We review a trial court's finding regarding a prosecutor's intent for clear error. *See State v. Lamar*, 205 Ariz. 431, 440, ¶ 45 (2003) (the trial court's finding that the prosecutor did not engage in intentional misconduct was not "clearly erroneous"); *see also State v. Cuffle*, 171 Ariz. 49, 51 (1992) ("Appellate review of a trial court's findings of fact is limited to a determination whether those findings are clearly erroneous."); *State v. Korovkin*, 202 Ariz. 493, 495, ¶ 8 (App. 2002) ("We defer to the trial court's finding that the prosecutor's comment here, if improper, was not intentionally so.").

¶13 On this record, we cannot say the trial court's finding that the prosecutor negligently, rather than intentionally, violated the evidentiary order was clearly erroneous. The prosecutor avowed that he misunderstood the legal basis for the trail court's ruling, and thereby mistakenly believed he was foreclosed only from introducing hearsay evidence regarding the U.S. Marshal's investigation. Although the evidentiary ruling was clearly broader in scope, and precluded any reference to Taylor's profiles on *America's Most Wanted*, the trial court had the opportunity to assess the prosecutor's credibility firsthand, and nothing in the record suggests that the prosecutor was less than forthcoming when he explained he had simply misunderstood the nature of the evidentiary ruling. *See State v. Garcia*, 224 Ariz. 1, 10, ¶ 22 (2010) (a reviewing court defers to the trial court's assessment of a prosecutor's credibility). Accordingly, jeopardy did not attach when the trial court granted the mistrial, and Taylor's double jeopardy rights were not violated by a second trial.

**B.    Alleged Jury Panel Taint.**

¶14        Taylor contends the trial court should have stricken the entire jury panel after a prospective juror intimated that he knew either defense counsel or Taylor through his ministry outreach program at a local jail.

¶15        While conducting *voir dire* on the first day of the second trial, the court introduced Taylor and defense counsel to the venire panel and inquired whether any prospective jurors knew either man. In response, two jurors raised their hands. The first juror ("Juror No. 18") explained defense counsel had previously represented him in a criminal matter, and the men had subsequently become friends. At that point, the court explained the jury would be required to assess Taylor's culpability solely based on the evidence presented in court, and Juror No. 18 stated he could follow that instruction. Turning to the second juror ("Juror No. 54"), the court asked, "[W]ho do you know?" Without directly answering the question posed, Juror No. 54 stated, "I'm a lay minister. I've just come off a ministry in Sheriff Joe's 4th Avenue Jail where I was privileged to preach the gospel." Without asking any follow-up questions, the court stated that the parties would speak with Juror No. 54 privately.

¶16        Later, after excusing the other prospective jurors from the courtroom, the court and parties met privately with Juror No. 54. When asked whether he knew Taylor, Juror No. 54 stated, "I don't recognize him." The court then excused Juror No. 54 from the courtroom and expressed concern that the other prospective jurors may nonetheless believe Juror No. 54 recognized Taylor from his jail ministry. Defense counsel discounted any possible prejudice, and suggested Juror No. 54 may have recognized him rather than Taylor. But Taylor, through counsel, expressed a residual concern that Juror No. 54's remarks may have improperly influenced the other jurors. Given this concern, defense counsel suggested the court excuse Juror No. 54 as a precautionary measure. Noting the prosecutor did not object, the trial court struck Juror No. 54 accordingly.

¶17        Although Taylor claims he urged the trial court to strike the entire jury panel, the record reflects that he moved to strike only Juror No. 54. We therefore review his challenge to the impartiality of the entire panel only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005); *see also State v. Garza*, 216 Ariz. 56, 63, ¶ 20 (2007) (reviewing a defendant's challenges to the *voir dire* process, raised for the first time on appeal, for fundamental error).

**¶18** A defendant has a constitutional right to a fair and impartial jury, but he is not entitled to a "particular jury." *State v. Greenawalt*, 128 Ariz. 150, 167 (1981). As the party challenging the impartiality of a jury panel, a defendant bears the burden of showing that a juror's *voir dire* statements prejudiced empaneled jurors. *See State v. Doerr*, 193 Ariz. 56, 61, ¶ 18 (1998). To meet this burden, the defendant must present "objective indications of jurors' prejudice." *State v. Tison*, 129 Ariz. 526, 535 (1981). In reviewing such a claim, an appellate court does not presume prejudice because the trial court is in the "best position" to assess a remark's "impact on the jurors." *Doerr*, 193 Ariz. at 62, ¶ 23.

**¶19** Applying these principles here, Taylor has failed to demonstrate that he was denied his right to a fair and impartial jury. He does not identify anything in the record that suggests an empaneled juror was prejudiced by Juror No. 54's ambiguous, isolated, and fleeting remark. Relying primarily on *Mach v. Stewart*, 137 F.3d 630, 632–33 (9th Cir. 1997), Taylor speculates that Juror No. 54's comments may have improperly influenced one or more jurors. However, speculation is insufficient to demonstrate prejudice for purposes of fundamental error review. *See State v. Trostle*, 191 Ariz. 4, 13–14 (1997). Moreover, unlike the circumstances in *Mach*, in which a juror had repeatedly made "expert-like" statements regarding "material issues" related to "the defendant's guilt and the victim's truthfulness," *Doerr*, 193 Ariz. at 62, ¶ 19 (quoting *Mach*, 137 F.3d at 633), here, Juror No. 54 did not state he recognized Taylor from jail, much less profess expert knowledge or comment on Taylor's guilt or innocence. Furthermore, the trial court instructed the jurors to evaluate Taylor's culpability solely based on the evidence presented at trial and not speculate or "guess about any fact." We presume jurors follow the trial court's instructions, and Taylor has not provided any evidence to rebut this presumption. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). Therefore, Taylor has failed to present the requisite objective evidence of juror prejudice, and the trial court did not err, much less commit fundamental error, by failing to *sua sponte* strike the entire jury panel.[3]

---

[3] In his reply brief, Taylor argues for the first time that the empaneled jurors may have also been improperly influenced by Juror No. 43's *voir dire* remarks. Because arguments raised for the first time in a reply brief are waived, we do not address this claim. *State v. Brown*, 233 Ariz. 153, 163, ¶ 28 (App. 2013).

## C.     Inclusion of Lesser-Included Offense Instruction.

**¶20**          Taylor contends the trial court improperly instructed the jury, over objection, on the lesser-included offense of second-degree murder. He asserts no evidence supported the instruction.

**¶21**          During the settling of final jury instructions, the prosecutor requested lesser-included offense instructions for second-degree murder and manslaughter explaining, "the facts in this case suggest that the shooting . . . could have happened all of a sudden." Defense counsel objected to either lesser-included offense instruction, arguing the projectile evidence showed Arkeem C., not Taylor, caused G.L.'s death. Overruling the objection, the trial court found evidence supported both instructions, and explained the jury could reasonably find Taylor "was the shooter" but "did not premeditate," or that he acted sufficiently reckless to satisfy the *mens rea* component of either lesser-included offense.

**¶22**          We review a trial court's decision "to give a particular instruction" for an abuse of discretion. *State v. Sprang*, 227 Ariz. 10, 12, ¶ 5 (App. 2011). A trial court may instruct the jury on any lesser-included offense that is supported by the evidence. *State v. Gipson*, 229 Ariz. 484, 487, ¶ 17 (2012). A lesser-included offense instruction is warranted when a reasonable jury could find: (1) the State failed to prove an element of the greater offense, and (2) the evidence is sufficient to support a conviction on the lesser offense. *State v. Wall*, 212 Ariz. 1, 4, ¶ 18 (2006).

**¶23**          To convict Taylor of second-degree murder in this case, the State was required to prove that, acting without premeditation: (1) Taylor intentionally or knowingly caused G.L.'s death, or (2) under circumstances manifesting extreme indifference to human life, he recklessly engaged in conduct that created a grave risk of death and thereby caused G.L.'s death. *See* A.R.S. § 13-1104. Taylor does not dispute that the jury could reasonably find the State failed to prove premeditation, the distinguishing element between first-degree and second-degree murder. *See Sprang*, 227 Ariz. at 12, ¶ 6 ("Second-degree murder is a lesser-included offense of premediated first-degree murder, the difference between the two being premeditation."). Instead, he argues no reasonable jury could find he caused the victim's death or acted recklessly, and therefore no evidence supported an instruction on second-degree murder.

**¶24**          While it is true that a detective testified G.L. was shot in the head by a "rifle round," and J.M. testified Arkeem C., not Taylor, fired a rifle on the day in question, the detective explained that his testimony was

based on the autopsy and lab reports, not a firsthand analysis. Contrary to this detective's testimony, the medical examiner who conducted the autopsy of G.L. testified the projectile recovered from the body was too "fragmented" to determine the caliber of the firing weapon. Likewise, another detective, who processed the fragmented projectiles retrieved from G.L.'s vehicle, testified he was unable to discern the weapon used. Therefore, as noted by the State, the evidence did not rule out the possibility that Taylor fired the fatal shot.

¶25        More importantly, the evidence reflects that Taylor and Arkeem C. acted in concert to shoot at the Caprice. Immediately before the shooting commenced, J.M. heard one of the men say, "Are you ready?" Because their conduct was coordinated, and the trial court provided an accomplice liability instruction, the jurors could reasonably find Taylor was culpable for Arkeem C.'s actions during the drive-by shooting. *See* A.R.S. § 13-301 (defining "accomplice" as a person, acting "with the intent to promote or facilitate the commission of an offense," who solicits, commands, aids, or counsels another person to commit an offense). In other words, under a theory of accomplice liability, Taylor "caused" G.L.'s death even if Arkeem C. fired the fatal shot. *See State v. Baldenegro*, 188 Ariz. 10, 13 (App. 1996) (jurors can find the defendant "guilty as an accomplice" even if they "believed that [the defendant] drove the car and [a passenger] fired the shots").

¶26        Moreover, contrary to Taylor's additional claims, substantial evidence supports a finding that either he or Arkeem C. fired the fatal bullet. Without equivocation, J.M. testified that: (1) Taylor directed him to follow the Caprice, withdrew a handgun, leaned out the passenger window, and repeatedly shot at the Caprice, and (2) Arkeem C. stood upright through the sunroof and repeatedly fired a rifle at the Caprice. Given this testimony and the uncontroverted evidence that G.L. sustained his fatal head injury during the brief period that Arkeem C. and Taylor fired their weapons, a reasonable jury could find that either Arkeem C. or Taylor fired the fatal shot, and that both men were culpable.

¶27        With respect to the *mens rea* element, Taylor's challenge is likewise without merit. The location of the shooting was a "busy," high-traffic area. Shooting into a crowd, or in this case numerous occupied vehicles, is quintessential recklessness. *State v. Garnica*, 209 Ariz. 96, 102, ¶ 24 (App. 2004) (the discharge of a weapon into a group was, "at the least, reckless"). Although the record reflects that Taylor targeted only the occupants of the Caprice, his reckless conduct endangered the lives of every

person in the vicinity, and took G.L.'s life. Therefore, the trial court did not abuse its discretion by giving the second-degree murder instruction.

## CONCLUSION

¶28 We affirm Taylor's convictions and sentences.

