339 P.3d 659

**Debra Jean MILKE, Petitioner,**

v.

**The Honorable Rosa MROZ, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge.**

**State of Arizona ex rel. William G. Montgomery, Maricopa County Attorney, Real Party in Interest.**

No. 1 CA-SA 14–0108.

Court of Appeals of Arizona, Division 1.

Dec. 11, 2014.

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Lori L. Voepel and Kimerer & Derrick,

P.C., Phoenix By Michael D. Kimerer, for Petitioner.

Maricopa County Attorney, Phoenix By Vince H. Imbordino, Amanda M. Parker, Michael J. Mitchell, for Real Party in Interest.

Presiding Judge PATRICIA K. NORRIS, Judge JOHN C. GEMMILL, and Judge PETER B. SWANN delivered the opinion of the Court.

## OPINION

NORRIS, GEMMILL, SWANN, Judges:

¶ 1 Debra Jean Milke petitions this court for special action review of the superior court's denial of her motion to dismiss the capital charges against her. She alleges a retrial would violate the Double Jeopardy Clause of the Arizona Constitution because of the State's longstanding breaches of its constitutional duty to disclose impeachment evidence. In this extraordinary case, we agree. The State committed egregious prosecutorial misconduct that severely prejudiced Milke's defense, and nearly a quarter-century passed before the misconduct was fully brought to light. On this record and based on Arizona Supreme Court precedent, we conclude that retrial is not an effective remedy and the integrity of our system of justice demands application of the double jeopardy bar. We therefore exercise special action jurisdiction and grant relief by remanding with instructions to dismiss the charges against Milke with prejudice.

## SPECIAL ACTION JURISDICTION

■■■ ¶ 2 Special action jurisdiction is highly discretionary, but we will grant review if the question presented is of constitutional significance and there is no adequate remedy on appeal. *Randolph v. Groscost*, 195 Ariz. 423, 425, ¶ 6, 989 P.2d 751, 753 (1999); *see Lemke v. Rayes*, 213 Ariz. 232, 235, ¶ 2, 141 P.3d 407, 410 (App.2006); *Pool v. Superior Court In & For Pima Cnty.*, 139 Ariz. 98, 100, 677 P.2d 261, 263 (1984). Special action review of an interlocutory double jeopardy claim is appropriate "[b]ecause the Double Jeopardy Clause guarantees the right to be free from subsequent prosecution" and, if applicable, "the clause is violated by the mere commencement of retrial." *State v. Moody*, 208 Ariz. 424, 438, ¶ 22, 94 P.3d 1119, 1133 (2004). Therefore, we accept jurisdiction to address whether the continued prosecution of Milke is barred by the Double Jeopardy Clause of the Arizona Constitution.[1]

## BACKGROUND

■■ ¶ 3 More than two decades ago, in an interrogation by now-retired Phoenix Police Detective Armando Saldate, Jr., Milke allegedly confessed to murdering her four-year-old son.[2] At a suppression hearing before trial and during trial in 1990, Milke unsuccessfully argued that her confession was involuntary because she was too distraught to understand the *Miranda*[3] warnings Saldate gave her and Saldate failed to grant her request for a lawyer. He testified that Milke confessed her guilt, but Milke maintained her innocence and denied confessing to the murder. The State's case rested heavily on Saldate's credibility. It was Milke's testimony against Saldate's. The jury found Milke guilty of first-degree murder, conspiracy to commit first-degree murder, and kidnapping. The trial court sentenced her to death. *State*

---

1. The Arizona Supreme Court has determined that the court of appeals has broad authority to exercise special action jurisdiction over capital cases, and a party in a capital case is expected to file a petition for special action in the court of appeals before filing in the supreme court. *See State v. Arellano*, 213 Ariz. 474, 476, ¶ 4, 143 P.3d 1015, 1017 (2006).

2. Certain facts have been determined by the United States Court of Appeals for the Ninth Circuit in *Milke v. Ryan* (*Milke II*), 711 F.3d 998, 1003 (9th Cir.2013). If a federal court "upholds a collateral attack on a judgment of conviction

following a defendant's first state trial, the decision of the federal court becomes the law of the case. Further proceedings in any later trial based upon the same facts must be in conformity with the habeas corpus decision." *State v. Cumbo*, 9 Ariz.App. 253, 257, 451 P.2d 333, 337 (App.1969). *See also* Ariz. R. Evid. 201 (permitting a court to take judicial notice of adjudicative facts that can be accurately and readily determined from reliable sources).

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*v. Milke (Milke I)*, 177 Ariz. 118, 865 P.2d 779 (1993).

¶ 4 The Arizona Supreme Court affirmed Milke's convictions and sentences on direct appeal in 1993, *see id.*, and after her petition for post-conviction relief was denied, she sought habeas corpus relief in federal court. The United States District Court for the District of Arizona denied her petition, and she appealed to the United States Court of Appeals for the Ninth Circuit. *Milke v. Ryan (Milke II)*, 711 F.3d 998 (9th Cir.2013).

¶ 5 Milke was incarcerated for over twenty three years—twenty two years on death row—before the United States Court of Appeals for the Ninth Circuit granted her a conditional writ of habeas corpus in 2013, setting aside her convictions and sentences. The Ninth Circuit held that the State failed to disclose evidence required to be produced under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), regarding Saldate's previous instances of improper conduct and lying under oath while on the police force. *Milke II*, 711 F.3d at 1004. The Ninth Circuit found that the State had remained "unconstitutionally silent" about Saldate's previous instances of misconduct while on the police force. *Id.* at 1003. None of the undisclosed information had been revealed at the time Milke's convictions were affirmed.

 ¶ 6 To comply with *Brady/Giglio*, the prosecution is required unilaterally to disclose any impeachment or exculpatory evidence that is favorable to the defendant and which may create a reasonable doubt in jurors' minds regarding the defendant's guilt. *See Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *State v. Montano*, 204 Ariz. 413, 424, ¶ 52, 65 P.3d 61, 72, *supplemented by* 206 Ariz. 296, 77 P.3d 1246 (2003). When, as here, "the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of

evidence affecting credibility falls within this general rule." *Giglio*, 405 U.S. at 154, 92 S.Ct. 763 (citation omitted). Regardless of good or bad faith, a state's failure to adhere to *Brady/Giglio* by willfully or inadvertently suppressing favorable evidence violates a defendant's due process rights. *See Brady*, 373 U.S. at 86–87, 83 S.Ct. 1194; *see also Giglio*, 405 U.S. at 155, 92 S.Ct. 763.

¶ 7 After reviewing the extensive record, the Ninth Circuit identified evidence of numerous prior acts of improper and deceitful conduct by Saldate, the consequences of which ranged from disciplinary suspension after Saldate lied to superiors about his sexual conduct with a detained female motorist to suppression of trial testimony for Fifth Amendment violations.[4] By the start of Milke's trial in 1990, at least seven cases involving instances of Saldate's misconduct had been or were being litigated, yet the State failed to disclose any such information to Milke and her attorney. And when Milke subpoenaed Saldate's personnel file, the City of Phoenix Police Department—part of the State for these purposes—moved to quash the subpoena. The Ninth Circuit concluded that the State knew of Saldate's misconduct and failed to disclose this evidence in a timely manner and described the State's actions as "more akin to active concealment." *Milke II*, 711 F.3d at 1001, 1006. Although the State has denied intentional misconduct, the Ninth Circuit imputed to it knowledge of impeachment material because considerable evidence eventually was produced in federal habeas proceedings and the State never asserted it had been unable to disclose this evidence before Milke's trial. *Id.* at 1005–07. The court held the State's failure denied Milke's constitutional right to a fair trial. *Id.*

¶ 8 After the Ninth Circuit set aside Milke's convictions and sentences, the State initiated retrial proceedings. Milke moved to dismiss the charges against her, arguing that the intentional and egregious prosecutorial misconduct by the State identified by the

---

4. In anticipation of Milke's pending retrial, Saldate announced his intention to invoke his right to avoid self-incrimination under the Fifth Amendment. Because Saldate did not show a real and appreciable risk of prosecution for past offenses and because the Fifth Amendment does not provide protection against future perjury, this court rejected his invocation of the Fifth Amendment privilege against self-incrimination. *State ex rel. Montgomery v. Mroz*, 2014 WL 1516585 (2014).

Ninth Circuit triggers double jeopardy protection, barring retrial. After the trial court denied her motion and a motion for reconsideration, Milke petitioned this court for special action relief. After briefing and oral argument, this court issued an order accepting jurisdiction and staying the trial court proceedings. We now grant relief.

## ANALYSIS

■ ¶ 9 Whether double jeopardy bars retrial is a question of law that we review de novo. *Moody,* 208 Ariz. at 437, ¶ 18, 94 P.3d at 1132.

■ ¶ 10 Like the Double Jeopardy Clause of the United States Constitution, our state's Double Jeopardy Clause includes the right to be free from multiple trials for the same offense and, generally, to have a fair trial completed before the original jury. *Pool,* 139 Ariz. at 109, 677 P.2d at 272; Ariz. Const. art. 2, § 10. Our supreme court has determined, however, that the Double Jeopardy Clause of the Arizona Constitution affords even greater protection than the federal Constitution, barring retrial when there are instances of egregious prosecutorial misconduct that raise serious concerns regarding the integrity of our system of justice. *See State v. Minnitt,* 203 Ariz. 431, 438–39, ¶¶ 29–35, 55 P.3d 774, 781–82 (2002); *State v. Jorgenson,* 198 Ariz. 390, 391–93, ¶¶ 4–11, 10 P.3d 1177, 1178–80 (2000); *Pool,* 139 Ariz. at 108–09, 677 P.2d at 271–72. Additionally, the Arizona Supreme Court in *Jorgenson* cited with approval the Pennsylvania case of *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321, 322–23 (1992), in which that state's supreme court held that double jeopardy bars retrial when the prosecution deliberately fails to disclose significant impeachment and exculpatory evidence during the defendant's initial trial. *Jorgenson,* 198 Ariz. at 392–93, ¶ 11, 10 P.3d at 1179–80. Reading *Minnitt, Jorgenson, Smith,* and *Pool* together, Arizona courts may, under extraordinary circumstances, apply double jeopardy to bar retrial when the State's severe and prejudicial *Brady* violations in withholding impeachment evidence prevent a fair trial and result in the reversal of a conviction.

## Litigation Involving Saldate's Misconduct

■ ¶ 11 At oral argument before this court, the State properly conceded that it had committed *Brady* violations in connection with Milke's trial. Although the State did not concede its *Brady* violations were intentional, the record reveals that the State engaged in egregious misconduct by failing to produce known impeachment evidence regarding Saldate. *See Milke II,* 711 F.3d at 1000 ("The state knew about this misconduct but didn't disclose it, despite the requirements of [*Brady* and *Giglio*]"). During Milke's initial trial, prosecutors in the Maricopa County Attorney's Office were litigating claims involving instances of impropriety by Saldate. From 1983 to 1990, there were at least seven cases involving investigation of Saldate's interrogation methods and honesty, but no information about those seven cases was disclosed to Milke:

- *State v. Yanes,* CR130403 (Ariz.Super.Ct. Nov. 14, 1983). Saldate admitted interrogating a suspect who was strapped to a hospital gurney, incoherent after apparently suffering a skull fracture. The trial court subsequently suppressed those statements.

- *State v. Rodriguez,* CR161282 (Ariz.Super.Ct. Nov. 20, 1986). The trial court found Saldate told a grand jury that the murder victim had been shot four times, even though it was "undisputed" that the victim was shot only once.

- *State v. Conde,* CR88–05881(B), CA 90–475 (Ariz.Super.Ct. Oct. 24, 1989). Saldate interrogated a suspect in intensive care who was intubated and connected to intravenous lines. The trial court subsequently found the statements involuntary.

- *State v. Reynolds,* CR88–09605 (Ariz.Super.Ct. Feb. 27, 1989). The trial court found that Saldate's false statements to the grand jury denied the defendant his right to due process and a fair and impartial presentation of the evidence.

- *State v. Rangel,* CR89–08086 (Ariz.Super.Ct. Oct. 16, 1989). Saldate and a prosecutor misled a grand jury by selectively recounting the defendant's state-

ments. The trial court held that Saldate's and the prosecutor's statements had materially affected the grand jury's deliberation and remanded the case for a new finding of probable cause.

- *State v. Jones*, CR 90–05217 (Ariz.Super.Ct. Nov. 29, 1990). In the course of a murder investigation, Saldate directed an 'officer to place a juvenile by himself in an interrogation room,' where the juvenile was handcuffed to a table. The trial court suppressed the subsequent confession because of lack of probable cause and illegal arrest.

- *State v. King*, CR90–00050 (Ariz.Super.Ct. Jun. 22, 1990). Saldate kept asking questions long after the defendant indicated he no longer wanted to answer. The trial court ruled that those statements were inadmissible.

*Milke II*, 711 F.3d at 1013–15.

¶ 12 In addition to litigation concerning Saldate's alleged misconduct, his disciplinary record included documentation regarding an incident involving a sexual quid pro quo with a female motorist. In a disciplinary write-up dated August 1973, the Phoenix Police Department ("Department") suspended Saldate for making advances and taking liberties with the female driver of a car that he had stopped. When initially questioned about the incident, Saldate denied his involvement until a polygraph test revealed his dishonesty. Both the police chief and the city manager questioned Saldate's character, stating that "because of this incident, your image of honesty, competency, and overall reliability must be questioned." *Id.* at 1020. The Ninth Circuit found the State knew of this misconduct but, in violation of *Brady*, failed to disclose it to Milke. *Id.* at 1001.

¶ 13 The Ninth Circuit held that these matters constituted evidence of Saldate's dishonesty and violations of *Miranda* that could have been used to impeach Saldate at trial. We conclude that the State's failure to disclose these matters to Milke amounts to egregious misconduct because the material was "highly significant to the primary jury issue" with potential to have an "important effect on the jury's determination." *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647,

94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Mindful of the distinction between ordinary trial error and egregious misconduct, we conclude that the impeachment evidence not disclosed regarding Saldate, in a capital prosecution dependent on his credibility, demonstrates the latter. The nondisclosure here consists of more than a few collateral matters and constituted egregious misconduct that resulted in a flagrant denial of due process. *See id.*

### The State's Motion to Quash the Personnel File Subpoena

█ ¶ 14 During her trial, Milke subpoenaed the Police Department's Custodian of Records for Saldate's personnel records. That subpoena should have been unnecessary, because the State should have produced the impeachment material automatically. *See Giglio*, 405 U.S. at 154, 92 S.Ct. 763. Instead, the Department filed a motion to quash. For *Brady/Giglio* purposes, the Department is part of the State. Furthermore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The filing of the motion to quash likely prevented disclosure of the incident involving the sexual quid pro quo with the female motorist, because Saldate's disciplinary record fell within the scope of the subpoena. *See supra* ¶ 12. The subpoena was quashed in large part, except for documents relating to Saldate's training and those describing police department policies, which were produced for in camera review. *Milke II*, 711 F.3d at 1004. The trial court's apparent error in substantially quashing the subpoena did not relieve the State of its constitutional obligation to disclose. *See Giglio*, 405 U.S. at 153–54, 92 S.Ct. 763. We conclude that the filing of a motion to quash the subpoena for Saldate's personnel and disciplinary records was a direct violation of *Brady/Giglio*.

█ ¶ 15 The State violated Milke's rights when it failed to produce *Brady* material at trial, during appeal, and during post-conviction proceedings in state court. *See*

*Milke II,* 711 F.3d at 1005. "Where a defendant doesn't have enough information to find the *Brady* material with reasonable diligence, the state's failure to produce the evidence *is* considered suppression." *Id.* at 1018 (emphasis in original). Because the State did not comply with its duty under the law to disclose evidence impeaching its pivotal witness against Milke, she was forced to defend herself at trial without crucial information she was constitutionally entitled to have.

### The Duration of the Non–Disclosure

¶ 16 The prosecution's *Brady/Giglio* obligations continue until all challenges to the conviction have been exhausted. *See Canion v. Cole,* 210 Ariz. 598, 599, ¶ 8, 115 P.3d 1261, 1262 (2005) ("The Court of Appeals found, and the State acknowledges, an ethical and constitutional obligation to disclose clearly exculpatory material that comes to its attention after the sentencing has occurred, and we affirm that the State does bear such a duty.") (internal citation omitted). The nondisclosure by the State of the evidence impeaching Saldate persisted for years after the conclusion of the state court proceedings, until the evidence was finally discovered in the course of the federal habeas proceedings. *See Milke II,* 711 F.3d at 1006. Although the State had knowledge of the impeachment evidence, including the records from which it could be found, the non-disclosures from 1990 remained unresolved and uncured, thereby exacerbating the constitutional harm from the original *Brady* violations. *See Milke II,* 711 F.3d at 1012–16; *cf. Minnitt,* 203 Ariz. at 439, ¶ 37, 55 P.3d at 782 ("[W]here a prosecutor … engages in egregious conduct clearly sufficient to require a mistrial but manages to conceal his conduct until after trial, the same circumstance is presented as in *Pool* and *Jorgenson* and the same reasoning applies.").

¶ 17 We are unable to conclude that the long course of *Brady/Giglio* violations in this case are anything but a severe stain on the Arizona justice system. Nondisclosure of this magnitude calls into question the integrity of the system and was highly prejudicial to Milke. *See generally Minnitt,* 203 Ariz. at 433, ¶ 4, 55 P.3d at 776. In these circumstances—which will hopefully remain unique in the history of Arizona law—the most potent constitutional remedy is required.

### The Knowledge of the Individual Prosecutor

¶ 18 The State's argument that the prosecutor in Milke's 1990 trial did not personally know of Saldate's misconduct misses the mark. *See Milke II,* 711 F.3d at 1012 (holding that the "prosecutor is charged with knowledge of any *Brady* material of which the prosecutor's office or the investigating police agency is aware"). As already noted, it is the prosecutor's "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555; *see also Milke II,* 711 F.3d at 1006. Similarly, our supreme court has emphasized—in a different context but quite relevant here—that "[a] prosecutor's office cannot get around *Brady* by keeping itself in ignorance or compartmentalizing information about different aspects of a case." *State v. Lukezic,* 143 Ariz. 60, 67, 691 P.2d 1088, 1095 (1984) (quoting *Carey v. Duckworth,* 738 F.2d 875, 878 (7th Cir.1984)).

¶ 19 The extent of any individual prosecutor's knowledge of the misconduct is immaterial. Though in some cases an individual may be the focus of the inquiry, it is the duty of the *State* as a whole to conduct prosecutions honorably and in compliance with law. *See Kyles,* 514 U.S. at 438, 115 S.Ct. 1555 (holding that an individual prosecutor's lack of knowledge of impeachment information is no excuse); *Giglio,* 405 U.S. at 154, 92 S.Ct. 763 (explaining that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it"). The Maricopa County Attorney's Office was aware by the time of Milke's trial in 1990 of Saldate's improper conduct, as several of its prosecutors had been forced to address the subject in other prosecutions. The court documents from these other prosecutions and the information in Saldate's disciplinary record "fit within the broad sweep" of *Bra-*

*dy/Giglio, see Milke II,* 711 F.3d at 1006, and it was the State's obligation to discover and disclose such information, regardless of whether the information was possessed by other prosecutors or the police, *see Kyles,* 514 U.S. at 437–38, 115 S.Ct. 1555.

### Application of Double Jeopardy to Bar Retrial

¶ 20 In determining whether double jeopardy may bar a retrial, our supreme court has drawn a "distinction between simple prosecutorial error, such as an isolated misstatement or loss of temper, and misconduct that is so egregious that it raises concerns over the integrity and fundamental fairness of the trial itself." *Minnitt,* 203 Ariz. at 438, ¶ 30, 55 P.3d at 781 (citing *Pool,* 139 Ariz. at 105–07, 677 P.2d at 268–70). Double jeopardy may bar retrial in the face of extreme and improper misconduct that is highly prejudicial to the defendant and the integrity of the system. *See id.* at 433, ¶ 4, 55 P.3d at 776. When, as here, egregious prosecutorial misconduct continues for a significant period of time, preventing a fair opportunity for acquittal or reversal on appeal, preservation of the integrity of our system of justice is paramount. *Jorgenson,* 198 Ariz. at 393, ¶ 13, 10 P.3d at 1180.[5] Our decision in this case is based on principles that follow naturally in the wake of *Pool, Jorgenson,* and *Minnitt.* Yet, unlike those cases, our decision is not based on a finding that a particular prosecutor intentionally and knowingly violated *Brady* or otherwise sabotaged the defendant's right to a fair trial before the original jury. Rather, our emphasis here is necessarily on the State as a whole, the significance of the *Brady/Giglio* violations, and the entire record. We conclude that this is the rare case in which preservation of the integrity of our legal system requires application of the bar of double jeopardy.

5. As our supreme court explained in *Jorgenson:* Application of double jeopardy is not only doctrinally correct when egregious and intentional prosecutorial misconduct has prevented acquittal, it is also required as a matter of pragmatic necessity. Any other result would be an invitation to the occasional unscrupulous or overzealous prosecutor to try any tactic, no matter how improper, knowing that there is

¶ 21 The usual remedy for serious *Brady* violations is a new trial. But the State's violations of Milke's constitutional rights are not merely technical or minor in nature. Rather, they go to the core of the State's ability to prove Milke's guilt, raise grave questions concerning the integrity of the criminal justice system, and come within "the type of governmental abuse at which the double jeopardy clause was aimed." *See Jorgenson,* 198 Ariz. at 393, ¶ 13, 10 P.3d at 1180. The State's case rested primarily on the testimony and credibility of a police detective with a documented history of misconduct and dishonesty. Yet, in a case in which the State was seeking the death penalty, it failed to disclose critical impeachment evidence that was essential to the question of reasonable doubt, and thus, Milke's innocence or guilt. Based on the record of this prosecution, fidelity to our supreme court's decisions interpreting the Arizona Constitution's Double Jeopardy Clause requires us to bar retrial of Milke. No lesser sanction would rehabilitate the damage done to the integrity of the justice system.

¶ 22 Our analysis is based entirely on whether double jeopardy applies to bar Milke's retrial in this case, and we express no opinion regarding her actual guilt or innocence. As demonstrated by our supreme court's decision in *Minnitt,* actual guilt or innocence is not a part of a constitutional double jeopardy analysis. In *Minnitt,* our supreme court applied the bar of double jeopardy based on prosecutorial misconduct in the first two trials, even though the defendant was convicted in the third trial, which was apparently free of such misconduct. As the court explained:

This case is an anomaly; egregious prosecutorial misconduct occurred in Minnitt's first two trials, but the third trial, conducted by a new prosecutor and allegedly free of misconduct, resulted in a conviction.

little to lose if he or she can talk an indulgent trial judge out of a mistrial. The worst that could then happen is reversal for a new trial and another shot at a conviction. This, of course, is exactly the type of governmental abuse at which the double jeopardy clause was aimed.

198 Ariz. at 393, ¶ 13, 10 P.3d at 1180.

We note, however, that whether or not the third trial was free from false testimony, falsehoods in the two previous trials permeated the process to the extent that fairness in the third trial could not correct the misdeeds of trials one and two.

*Minnitt*, 203 Ariz. at 440, ¶ 43, 55 P.3d at 783.

### CONCLUSION

¶ 23 For the preceding reasons, we accept special action jurisdiction and grant relief. Because of the State's severe, egregious prosecutorial misconduct in failing to disclose impeachment evidence prior to and during trial and for years thereafter, double jeopardy bars retrial of Milke under our Arizona Constitution and Arizona Supreme Court precedent. We remand to the trial court for dismissal with prejudice of the pending charges against Milke.