NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

AUBREY ERNEST NASH, *Appellant.*

No. 1 CA-CR 18-0377
FILED 10-24-2019

Appeal from the Superior Court in Yavapai County
No. P1300CR201600796
The Honorable Tina R. Ainley, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Stephen L. Duncan, Scottsdale
*Counsel for Appellant*

Aubrey E. Nash, Yuma
*Appellant*

---

**MEMORANDUM DECISION**

---

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

¶1 This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for defendant Aubrey Ernest Nash has advised the court that, after searching the entire record, he has found no arguable question of law and asks this court to conduct an *Anders* review of the record. Nash was given the opportunity to file a supplemental brief pro se and has done so. This court has reviewed the record and the briefs and has found no reversible error. Accordingly, Nash's convictions and resulting sentences are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2 In June 2016, Nash and two accomplices were stopped by a Yavapai County Sherriff's Deputy on Interstate 40. Based on that interaction, Nash was charged by indictment (and later convicted of) four felony offenses: (1) sale or transportation of dangerous drugs, a Class 2 felony; (2) sale or transportation of marijuana, a Class 4 felony and (3) two counts of possession of drug paraphernalia, Class 6 felonies. The State alleged various aggravating circumstances, including that Nash had six prior felony convictions, tracing back to 1995.

¶3 The superior court proceedings lasted nearly two years and involved various hearings. The State extended plea offers to Nash, which were not accepted. On several occasions, the court granted Nash's request for different court-appointed counsel.

¶4 In January 2017, Nash joined a motion to suppress filed by a co-defendant. In February 2017, Nash filed a motion to suppress, challenging the warrantless seizure and search of the car he drove in June 2016 and all statements he made to law enforcement. After an evidentiary hearing, the court denied the motions to suppress and later denied Nash's motion to reconsider.

¶5          In April 2018, Nash waived his right to a jury trial, in a writing filed with the court, which was then accepted in open court. The parties submitted evidence and argument, and after affording the parties the opportunity to make supplemental filings, the court found Nash guilty as charged. After a colloquy, the court found Nash had two historical prior felony convictions, making him a Category 3 repeat offender. The court then sentenced Nash to mitigated, concurrent prison terms, the longest of which was for 12 years,[1] and awarded him 702 days of presentence incarceration credit. This court has jurisdiction over Nash's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2019).[2]

## DISCUSSION

¶6          The record shows Nash was represented by counsel at all relevant stages of the proceedings and counsel was present at all critical stages. The record provided contains substantial evidence supporting his convictions and resulting sentences. From the record, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the resulting sentences imposed were within statutory limits and the permissible ranges.

¶7          Nash's pro se brief on appeal, filed July 3, 2019, presses four arguments: (1) the court abused its discretion in denying the motions to suppress; (2) the State violated its disclosure obligations under *Brady v. Maryland*, 397 U.S. 753 (1970), "by not investigating into the video evidence in police agencies possession and then stating on record no video exist[s];" (3) these claimed errors should be assessed cumulatively and (4) the State

---

[1] The Judgment of Guilt and Sentence states the sentences were for "NONREPETITIVE" offenses, elsewhere stating that each were "with two historical prior Felony convictions." Given the sentences imposed, however, Nash was sentenced as a repetitive offender. Accordingly, the "NONREPETITIVE" portion of the Judgment is stricken, so that the modified Judgment reflects he was sentenced as a Category 3 repetitive offender. *See State v. Ovante*, 231 Ariz. 180, 188 ¶ 38 (2013) (allowing sentencing minute entry to be corrected on appeal when record clearly identifies intended sentence).

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

violated "28 United States Code (U.S.C.) § 5303(a) along with Supreme Court rule 42 E.R. 3.8."

¶8  This court "review[s] a trial court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in a light most favorable to sustaining the trial court's ruling." *State v. Adair*, 241 Ariz. 58, 60 ¶ 9 (2016) (citing *State v. Butler*, 232 Ariz. 84, 87 ¶ 8 (2013)). Evidence is not reweighed on appeal; this court defers to the superior court's factual findings, "including findings on credibility and the reasonableness of the inferences drawn by the officer." *State v. Teagle*, 217 Ariz. 17, 22 ¶ 19 (App. 2007) (citing cases). Questions of law and legal conclusions are reviewed de novo. *State v. Sweeney*, 224 Ariz. 107, 111 ¶ 12 (App. 2010) (citing cases).

¶9  At the evidentiary hearing on the motions to suppress, a defense investigator and the deputy testified. The deputy recounted that Nash was driving "in the evening" after sunset when it was getting dark with the lights off; "I believe'd it was unsafe for the vehicle to be traveling without any headlights or taillights." After also seeing an air freshener was obstructing the view through the windshield, the deputy stopped the car. The deputy first spoke with the driver (Nash) and obtained the names and birth dates for the two passengers. He then told Nash he would be receiving a warning for the moving traffic violation and asked to speak with Nash, who consented to do so**.** The deputy testified that Nash showed "a heightened level of nervousness" during the interaction.

¶10  Nash told the deputy that the car was a rental. The deputy then discovered that Nash's license "wasn't valid," which he later testified was an "arrestable offense" (although he told Nash he would not be arrested for that offense) and that one of the passengers with a valid license would need to drive. The deputy asked Nash if "there was anything illegal inside the vehicle" and Nash said "they had some water." The deputy also "detected the aroma of marijuana" from the car.

¶11  When the deputy questioned the occupants separately, Nash and the two passengers provided inconsistent answers, including the purpose and duration of the trip. The deputy then received consent from all three to search the car. During the search, the deputy found no luggage and a significant number of air fresheners, which he testified was unusual for a rental car, noting that air fresheners "are often used to cover up the odor of narcotics or controlled substances." The occupants consented to the deputy opening packages in the car. When one of the packages contained material consistent with drug packaging (a package, inside a box, inside

another box), and after one of the individuals withdrew her consent for further searching, the search stopped.

¶12        Based on the deputy's belief that criminal activity was afoot (including "the odors of marijuana" and "there was reason to believe there was drugs inside the packaging"), he detained all three individuals. The deputy called for a canine unit and requested criminal histories for all three. When the canine unit arrived 90 minutes later, the dog alerted and, ultimately, law enforcement found approximately five and a half pounds of methamphetamine and a pound and a half of marijuana in the packages. The deputy then arrested all three individuals, advised them of their *Miranda* rights and they consented to speak with the deputy, each giving additional inconsistent responses.

¶13        Having considered the evidence provided and after weighing credibility, the superior court denied the motions to suppress, finding "there was in fact a basis for the officer to stop the vehicle. Once the vehicle was stopped, the question becomes whether the contact is consensual or detention." The court found "the encounter was consensual up until the point that" the passenger "withdrew consent. By then, the officer had seen at least part of this package." The "view of that packaging, the way it was wrapped and the smell of what could have been marijuana, . . . I believe those two facts alone provide a basis for calling the canine and for the detention." Although the detention was lengthy, the court noted the officer called as soon as possible to get a canine and made additional calls to secure a canine, and as soon as the dog arrived, it alerted, meaning "there's not been a due-process violation in terms of the delay to get the canine. So based on that, I don't believe there's a basis for granting the motions to suppress; I will deny them at this time."

¶14        In challenging the denial of his motion to suppress on appeal, Nash "asserts when reasonable suspicion is in question all video/audio recordings become relevant material evidence which needed to be investigated by State prosecutors and defense attorney, to ensure petitioner's right to due process and equal protection are respected." To the extent that Nash suggests the State's investigation was inadequate, he has cited no authority supporting such an argument. Nor has Nash shown how Ariz. R. Crim. P. 16.1(d) or 16.2(b) — which he cites on appeal — furthers his argument. To the extent Nash suggests any inadequacy by his trial counsel, such a claim cannot be raised on direct appeal. *See* Ariz. R. Crim. P. 32.1.

**¶15**      Many of Nash's claims are based on the unsupported proposition that relevant video recordings were not captured and disclosed by the State. For example, Nash speculates that the State incorrectly "disclaimed the existence of any video recordings that obviated the need for petitioner to conduct an independent investigation." But as Nash concedes, the superior court ordered the disclosure of any such videos. Other than baldly asserting that order "was ignored by the State," Nash has not shown that any videotaped evidence was not properly captured and disclosed by the State. Indeed, his argument is based on speculation that "if" such material was "in the prosecutor's possession," it should have been disclosed. But there was no showing that such material existed but was not disclosed. Moreover, there was no testimony at the suppression hearing that any video was taken of the interactions with Nash. For this same reason — assuming evidence existed that should have been disclosed, as opposed to showing such evidence existed but was not disclosed — Nash's reliance on *Milke v. Mroz*, 236 Ariz. 276, 283 ¶ 18 (App. 2014) is misplaced.

**¶16**      This lack of supporting evidence is particularly telling given this court granting Nash's motions for extension of time to file an opening brief, so he could secure such evidence, trailing back to May 2019.[3]

**¶17**      For these same reasons, Nash's argument that the State "violated *Brady* by doing no investigation into the production of video evidence and stating on the record that no video exist[ed]" fails. This argument is based on the unsupported assumption that videotapes that should have been preserved were not preserved and were destroyed. And because Nash has shown no error, his argument that all errors should be assessed cumulatively similarly fails. In addition, to the extent that Nash argues the superior court improperly assessed credibility of the witnesses at the suppression hearing or trial, this court does not make credibility determinations (or reweigh the superior court's credibility determinations) on appeal. *See Teagle*, 217 Ariz. at 22 ¶ 19.

---

[3] Because the record on appeal was complete as of early September 2018, given extensions Nash requested, he was allowed to file his supplemental pro se brief in July 2019. Given the passage of time, the filing of his opening brief and the lack of supporting authority, Nash's July 22, 2019 motions to compel and for extension of time, and his September 3, 2019 motion for extension, are denied.

**¶18**       Finally, although Nash claims the prosecutor violated 28 U.S.C. § 530B(a), he has not shown how that statute (which governs conduct by certain lawyers employed by the United States) would provide any basis for a claim in this proceeding. *See* 28 C.F.R. § 77.2(a) (2019) ("attorney for the government" is defined as including various positions and individuals working for the United States and excluding even U.S. Department of Justice employees "who are not authorized to represent the United States in criminal or civil law enforcement litigation or to supervise such proceedings"). Moreover, even if applicable, those standards "are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by a party to litigation with the United States, including criminal defendants . . . and shall not be a basis for dismissing criminal . . . charges or proceedings." 28 C.F.R. § 77.5 (2019).

## CONCLUSION

**¶19**       This court has read and considered counsel's brief and Nash's pro se supplemental brief and has searched the record provided for reversible error and has found none. *Leon*, 104 Ariz. at 300; *State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999). Accordingly, Nash's convictions and resulting sentences are affirmed.

**¶20**       Upon the filing of this decision, defense counsel is directed to inform Nash of the status of the appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, (1984). Nash shall have 30 days from the date of this decision to proceed, if he desires, with a pro se motion for reconsideration or petition for review.

