NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEPHEN MURPHY-LOGUE, *Petitioner*,

*v.*

THE HONORABLE JOSHUA STEINLAGE, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the County of
COCONINO, *Respondent Judge*,

STATE OF ARIZONA ex rel. WILLIAM RING, Coconino County
Attorney, *Real Party in Interest*.

No. 1 CA-SA 24-0233
FILED 01-16-2025

Petition for Special Action from the Superior Court in Coconino County
No.  CR2022-00610
The Honorable Joshua Steinlage, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Blumberg & Associates, Phoenix
By Bruce E. Blumberg
*Co-Counsel for Petitioner*

The Bidwill Law Firm PLLC, Phoenix
By Josephine F. Bidwill
*Co-Counsel for Petitioner*

Coconino County Attorney's Office, Flagstaff
By Sasha Charls
*Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1　　　Stephen Murphy-Logue seeks special action review of the superior court's denial of his motion to dismiss all charges against him with prejudice. He alleges that his first trial ended in a mistrial because of prosecutorial misconduct, so a retrial would violate the Double Jeopardy Clause of the United States Constitution and Arizona Constitution. For reasons that follow, we accept jurisdiction but deny relief.

**FACTS AND PROCEDURAL BACKGROUND**

¶2　　　The State charged Murphy-Logue with two counts of sexual assault against his former fiancée, R.J., who asserted that Murphy-Logue had sexual intercourse with her without her consent on February 4, 2017. At Murphy-Logue's first trial, the State called a Sexual Assault Nurse Examiner, Michelle Kearney, to testify about statements R.J. made to her shortly after the alleged sexual assault. During direct examination, the State asked Kearney why she had indicated in her report that R.J. was at risk for post-trauma syndrome. At the end of a long answer, Kearney tacked on the sentence: "And, also, she noted that there were two previous incidents." The State immediately interrupted Kearney because the State had agreed not to reference previous incidents unless they were brought up by the defense.

¶3　　　Murphy-Logue moved for a mistrial at a conference in chambers. The parties briefed the issue, and the superior court granted the mistrial over the State's objection, noting that it expected evidence from both sides to make the ultimate verdict a close call, and that any minor detail could sway the jurors. The court thus concluded that proceeding with trial would be unfair to Murphy-Logue given the Nurse Examiner's reference to previous incidents.

2

¶4          Murphy-Logue moved to dismiss all charges with prejudice based on *Pool v. Superior Court*, 139 Ariz. 98, 108-09 (1984) (barring retrial if mistrial is caused by prosecutorial misconduct). After considering the prosecutor's explanation and hearing argument from the parties, the superior court denied the motion, noting that the witness's testimony was clearly unexpected and a mistake, that there was no evidence the prosecutor acted intentionally or indifferently regarding the risk of a mistrial, and there was no evidence that the prosecutor elicited the testimony for an improper purpose. Murphy-Logue filed this petition for special action review shortly before his second trial was set to begin.

## DISCUSSION

### I.      Jurisdiction.

¶5          Special action jurisdiction is discretionary. *Milke v. Mroz*, 236 Ariz. 276, 279, ¶ 2 (App. 2014). Here, a petition for special action is the appropriate vehicle for raising an interlocutory double jeopardy claim "[b]ecause the Double Jeopardy Clause guarantees the right to be free from subsequent prosecution" and, if applicable, "the clause is violated by the mere commencement of retrial." *State v. Moody*, 208 Ariz. 424, 438, ¶ 22 (2004); *Nalbandian v. Superior Court*, 163 Ariz. 126, 130 (App. 1989). Thus, we accept jurisdiction.

### II.     Double Jeopardy.

¶6          "Whether double jeopardy bars retrial is a question of law, which we review de novo." *Moody*, 208 Ariz. at 437, ¶ 18. We review for an abuse of discretion, however, the superior court's factual findings regarding conduct underlying a mistrial. *See State v. Korovkin*, 202 Ariz. 493, 495, ¶ 5 (App. 2002).

¶7          Arizona's Double Jeopardy Clause, like that of the United States Constitution, includes the right to be free from multiple trials for the same offense and, generally, to have a fair trial completed before the original jury. *Milke*, 236 Ariz. at 281, ¶ 10; *see also* Ariz. Const. art. 2, § 10. Moreover, Arizona's Double Jeopardy Clause affords even greater protection than its federal analogue, barring retrial when there are instances of egregious prosecutorial misconduct that raise concerns about the integrity of the justice system. *See State v. Minnitt*, 203 Ariz. 431, 438–39, ¶¶ 29–35 (2002); *State v. Jorgenson*, 198 Ariz. 390, 391–93, ¶¶ 4–11 (2000); *Pool*, 139 Ariz. at 108–09. Arizona distinguishes "between simple prosecutorial error, such as an isolated misstatement or loss of temper, and misconduct that is so egregious that it raises concerns over the integrity and

fundamental fairness of the trial itself." *Minnitt*, 203 Ariz. at 438, ¶ 30 (citing *Pool*, 139 Ariz. at 105–07). Double jeopardy bars retrial if there is extreme and improper misconduct that is highly prejudicial to the defendant. *Milke*, 236 Ariz. at 284, ¶ 20.

¶8　　　　When Murphy-Logue moved to dismiss all charges with prejudice, he asserted that the prosecutor was warned against eliciting testimony about prior incidents during a "bench conference" "just prior" to Kearney's examination. Murphy-Logue asserts that because the prosecutor admitted that she had not admonished her witness before direct examination, this omission establishes misconduct.

¶9　　　　The prosecutor explained, however, that during R.J.'s meeting with Kearney after the alleged sexual assault occurred, R.J. told Kearney there were two prior incidents where she felt uncomfortable but never said "no." During a pretrial interview with Kearney, Murphy-Logue's counsel tried to portray this part of Kearney's notes as saying that R.J. never said no on the day of the alleged offense. Kearney clarified that her statement referred to prior incidents, and the prosecutor instructed her to do the same thing if Murphy-Logue's counsel tried to misrepresent her notes during cross-examination.

¶10　　　　The prosecutor further explained that shortly before a different witness took the stand and while she was preparing for that witness, Murphy-Logue's attorney drew attention to part of Kearney's report and asked what the prosecutor planned to do about it. The prosecutor had asked Murphy-Logue's attorney if he planned to go down the "never said no" route—the way he had during the pretrial interview— and he said no. The prosecutor had then said she would remind Kearney not to testify about prior incidents during the next break. Because it was late in the day on a Friday, however, the court did not give a break between witnesses, and the prosecutor did not remind Kearney about volunteering information about the two prior incidents. The prosecutor explained that although she did not remind Kearney about volunteering information, she did not expect Kearny to do so unless the defense opened the door.

¶11　　　　The court denied Murphy-Logue's motion to dismiss, concluding that Kearney's testimony was clearly unexpected and a mistake, and that there was no evidence of prosecutorial misconduct. The court spelled out its reasoning for this denial, emphasizing that (1) its decision to grant a mistrial was close, (2) the prosecutor was dissatisfied with that decision (meaning the prosecutor did not seek a mistrial for tactical purposes), (3) the "bench conference" Murphy-Logue repeatedly

referenced was a conversation between the parties without any resulting order, record, or ruling, (4) the Nurse Examiner was an inexperienced witness, (5) the "two previous incidents" Kearney testified to were not sexual assaults (only instances where R.J. felt uncomfortable about engaging in intercourse with Murphy-Logue, but never said no), (6) the parties' discussion about those two instances did not occur immediately before Kearney took the stand, and (7) the sequence of events did not suggest the prosecutor instructed Kearney to bring up those instances. These findings and the court's reasoning are supported by the record, and we will not substitute our judgment for that of the superior court regarding whether there was intentional misconduct by the prosecutor. *See Korovkin*, 202 Ariz. at 495, ¶¶ 5, 8. Thus, Murphy-Logue has not established that the superior court abused its discretion by denying his motion to dismiss the charges against him with prejudice.

## CONCLUSION

¶12        Accordingly, we accept jurisdiction but deny relief.

