NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KEATHEN GIAMBOI, *Appellant.*

No. 1 CA-CR 24-0437

FILED 07-29-2025

Appeal from the Superior Court in Mohave County
No. S8015CR202200754
The Honorable Douglas Camacho, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Bob Kerry Law, Tucson
By Robert A. Kerry
*Counsel for Appellant*

Keathen Giamboi, Eloy
*Appellant*

---

**MEMORANDUM DECISION**

---

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**P A T O N**, Judge:

¶1        Keathen Giamboi appeals his convictions and sentences for attempted second-degree murder, two counts of aggravated assault, and possession of dangerous drugs. Giamboi's counsel has advised us that after a diligent search of the record, counsel has found no arguable, non-frivolous questions of law and asks us to conduct an *Anders* review of the record. *See Anders v. California*, 386 U.S. 738 (1967); *State v. Leon*, 104 Ariz. 297 (1969). Giamboi filed a supplemental brief, raising issues we address in this decision. We have reviewed the record and Giamboi's arguments and find no reversible error. We therefore affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Giamboi. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3        In June 2022, Giamboi was driving his car in circles and blowing up dust in a truck stop dirt lot in Kingman, Arizona. Another driver, the victim, pulled into the lot, exited his truck, and began arguing with Giamboi. Giamboi threw a coffee cup out of his car window at the victim while driving away. The victim then threw a rock at Giamboi's car and taunted him by slapping his chest. Giamboi turned back and drove towards the victim, hitting him with his car. Giamboi then circled back and ran over the victim while he was lying on the ground. The victim sustained severe injuries.

¶4        Law enforcement officers located the car and Giamboi a few miles from the truck stop. Upon searching Giamboi, the officers found keys to the car and a small bag containing what was later identified as methamphetamine.

¶5        A grand jury indicted Giamboi on one count of attempted first-degree murder, two counts of aggravated assault based on serious

physical injury and using a dangerous instrument, and one count of possession of dangerous drugs (methamphetamine).

¶6        The first trial ended in a mistrial.  After a subsequent five-day trial, the jury found Giamboi guilty of the lesser-included offense of attempted second-degree murder, two counts of aggravated assault, and possession of dangerous drugs.  Giamboi waived his right to have the jury further determine sentencing enhancements and aggravating circumstances.

¶7        At sentencing, the court found causing serious physical injury was an aggravating circumstance for the attempted second-degree murder count and one count of aggravated assault.  The court also found Giamboi had one historical prior felony conviction.

¶8        The court imposed concurrent sentences of 18 years for attempted second-degree murder, 7 years for one aggravated assault conviction, and 12 years for the second aggravated assault conviction, with 757 days of presentence incarceration credit.  The court also imposed a 3-year sentence for the possession of dangerous drugs conviction, to run consecutively to the other counts with no credit for time served.  The court imposed 36 months of community supervision following release.

## DISCUSSION

¶9        Giamboi raises several issues in his supplemental brief, none of which were raised in the superior court.

¶10        Giamboi first contends he was "forced into having a public defender" because law enforcement officers seized his phone and credit cards upon his arrest and he was unable to "call anyone for help."  He also argues his first public defender retired due to actions by the State.  Giamboi cites no record evidence to substantiate these claims, and we found none.  An appointed public defender represented him throughout the proceedings as trial counsel.  At trial, the State asked the court to confirm whether Giamboi wanted to be represented by that attorney, which it did, and Giamboi responded affirmatively.  Giamboi has shown no error.

¶11        Giamboi also contends his trial counsel gave him "bad advice . . . not to testify."  We construe this argument as a claim for ineffective assistance of counsel, which can only be resolved in a post-conviction relief proceeding.  *See* Ariz. R. Crim. P. 32.1(a); *State v. Chavez*, 243 Ariz. 313, 318, ¶ 15 (App. 2017).  We therefore decline to address it.

3

¶12            Giamboi next contends his second trial resulted in a "hung jury" because Juror #1 allegedly "testified that he [was] the boyfriend of the DPS chief's daughter." Giamboi appears to be referring to Juror #1 stating during voir dire that he knew another prospective juror's daughter, who was the wife of a Department of Public Safety captain. Giamboi's counsel asked Juror #1 whether this would affect his judgment in this case. Juror #1 answered it would not affect his judgment because he was "fairly decisive and pretty good at sticking to [his] beliefs." Giamboi's counsel did not move to strike Juror #1. The prospective juror whom Juror #1 knew was not empaneled on the jury. Giamboi fails to show Juror #1 was biased, and we discern no error. *See* Ariz. R. Crim. P. 18.4(b) ("The court, on motion or on its own, must excuse a prospective juror . . . if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict."); *State v. Acuna Valenzuela*, 245 Ariz. 197, 210, ¶ 30 (2018) ("[W]e defer to the decision of the trial judge who actually heard the testimony and observed the juror's demeanor.").

¶13            Giamboi contends he was wrongly convicted of possession of dangerous drugs because he had a methamphetamine prescription. Giamboi did not present any evidence showing the methamphetamine found in his possession was prescribed. He has thus shown no error.

¶14            Giamboi also argues the State suppressed exculpatory video evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). To prove this claim, Giamboi must show: (1) the evidence was favorable to him; (2) the State suppressed it; and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

¶15            The truck stop had three cameras pointing at the incident: the front camera, Camera 31, and Camera 32. Giamboi argues the State disclosed video footage from Camera 32 to his first attorney but that the footage later disappeared through "collusion" and "malice." Giamboi submits that footage from Camera 32 would have shown he did not intentionally drive towards the victim.

¶16            Giamboi fails to show that the State suppressed evidence. First, if the State disclosed the video to Giamboi's first attorney as he alleges, the State did not suppress the evidence. *See Milke v. Mroz*, 236 Ariz. 276, 282, ¶¶ 12–13 (App. 2014) (explaining suppression occurs when the State fails to disclose exculpatory evidence); Ariz. R. Crim. P. 15.1. Further, Giamboi's suppression argument is belied by the record because no evidence indicates the Camera 32 video footage that Giamboi is referring to existed. The truck stop manager who turned over all of the video footage

and the detectives who received it all testified there was no footage of the incident recorded by Camera 32. And Giamboi fails to show how this video footage would have been favorable to him. The jury saw video footage of the incident from Camera 31 showing Giamboi hit the victim with his car and then run the victim over. He fails to explain how video footage of the same incident but from a different angle would have been favorable to him. He has shown no error.

¶17        Giamboi next argues he has post-traumatic stress disorder (PTSD), which renders him "mindless" when he is "under attack," and is the only reason he fled the scene after the incident. Giamboi says he was "misrepresented" as a violent person. His arguments reveal no trial error. Unless a defendant asserts an insanity defense at trial, which Giamboi did not do, a defendant is generally prohibited from offering evidence of PTSD to negate the mens rea required to commit the crime. *See State v. Malone*, 247 Ariz. 29, 31, ¶ 8 (2019); *State v. Reaves*, 252 Ariz. 553, 562, ¶ 20 n.2 (App. 2022).

¶18        Giamboi finally argues that two detectives lied in court, "not only about [the Camera 32 video], but multiple impeachment issues." He does not establish that the detectives lied, nor does our review of the record reveal any evidence of perjury or prosecutorial misconduct.

¶19        In addition to evaluating the arguments raised in Giamboi's supplemental brief, we have reviewed the entire record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). We find none. The record contains sufficient evidence to support Giamboi's convictions and sentences. The record reflects that Giamboi was present and represented by counsel for all critical stages of the proceedings. Ariz. R. Crim. P. 6.1, 19.2. All proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and Giamboi's sentences were within the statutory guidelines. *See* A.R.S. §§ 13-1104(A)(1), -1204(A)(1), (2), -3407(A)(1), -701, -702, -704, -801; Ariz. R. Crim. P. 26.9, 26.10.

**CONCLUSION**

¶20        We affirm Giamboi's convictions and sentences. Upon the filing of this decision, Giamboi's counsel shall inform Giamboi of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Giamboi has thirty days from the date of this

decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.  *See* Ariz. R. Crim. P. 31.3(a), 31.20(c), 31.21(b)(2)(A).



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR